# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ALABAMA
### SOUTHERN DIVISION

| | |
|---|---|
| **ANDREW D. DUNAVANT, JR., et al.,** | ) |
| | ) |
| **Plaintiffs,** | ) |
| | ) |
| **v.** | ) **CIVIL ACTION 13-0268-WS-M** |
| | ) |
| **SIROTE AND PERMUTT, P.C.,** | ) |
| | ) |
| **Defendant.** | ) |

## ORDER

This matter is before the Court on the defendant's motion for summary judgment and on the plaintiffs' motion for partial summary judgment. (Docs. 44, 47). The parties have filed briefs and evidentiary materials in support of their respective positions, (Docs. 45, 48-49, 52-54, 57, 60, 64), and the motions are ripe for resolution. After careful consideration, the Court concludes that the plaintiffs' motion is due to be denied and the defendant's motion is due to be granted in part and denied in part.

## BACKGROUND

According to the complaint, (Doc. 1), the plaintiffs executed a mortgage on a residence. The plaintiffs made their payments, but the lender and/or servicer refused to accept them and ultimately instituted foreclosure proceedings. The plaintiffs obtained a state court order enjoining the lender and servicer from proceeding with any foreclosure action, but the defendant law firm thereafter published notice of foreclosure sale on two occasions.

The complaint asserts two causes of action. Count One is a federal claim for multiple violations of the Fair Debt Collection Practices Act ("the Act" or "FDCPA"), and Count Two is a state claim for invasion of privacy. By previous

order, the Court granted the defendant's motion for judgment on the pleadings as to all aspects of the FDCPA claim other than its allegation of a violation of 15 U.S.C. § 1692f(6). (Doc. 32). The plaintiffs seek summary judgment on the merits of their claim under the Act. The defendant seeks summary judgment on both procedural and substantive grounds.

## DISCUSSION

Summary judgment should be granted only if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The party seeking summary judgment bears "the initial burden to show the district court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial." *Clark v. Coats & Clark, Inc.,* 929 F.2d 604, 608 (11th Cir. 1991). The moving party may meet its burden in either of two ways: (1) by "negating an element of the non-moving party's claim"; or (2) by "point[ing] to materials on file that demonstrate that the party bearing the burden of proof at trial will not be able to meet that burden." *Id*. "Even after *Celotex* it is never enough simply to state that the non-moving party cannot meet its burden at trial." *Id*.; *accord Mullins v. Crowell*, 228 F.3d 1305, 1313 (11th Cir. 2000); *Sammons v. Taylor*, 967 F.2d 1533, 1538 (11th Cir. 1992).

"When the *moving* party has the burden of proof at trial, that party must show *affirmatively* the absence of a genuine issue of material fact: it must support its motion with credible evidence ... that would entitle it to a directed verdict if not controverted at trial. [citation omitted] In other words, the moving party must show that, on all the essential elements of its case on which it bears the burden of proof, no reasonable jury could find for the nonmoving party." *United States v. Four Parcels of Real Property*, 941 F.2d 1428, 1438 (11th Cir. 1991) (en banc) (emphasis in original); *accord Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir. 1993).

"If the party moving for summary judgment fails to discharge the initial burden, then the motion must be denied and the court need not consider what, if any, showing the non-movant has made." *Fitzpatrick*, 2 F.3d at 1116; *accord Mullins*, 228 F.3d at 1313; *Clark*, 929 F.2d at 608.

"If, however, the movant carries the initial summary judgment burden ..., the responsibility then devolves upon the non-movant to show the existence of a genuine issue of material fact." *Fitzpatrick*, 2 F.3d at 1116. "If the nonmoving party fails to make 'a sufficient showing on an essential element of her case with respect to which she has the burden of proof,' the moving party is entitled to summary judgment." *Clark*, 929 F.2d at 608 (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986)) (footnote omitted); *see also* Fed. R. Civ. P. 56(e)(2) ("If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may … consider the fact undisputed for purposes of the motion ….").

In deciding a motion for summary judgment, "[t]he evidence, and all reasonable inferences, must be viewed in the light most favorable to the nonmovant …." *McCormick v. City of Fort Lauderdale*, 333 F.3d 1234, 1243 (11th Cir. 2003).

There is no burden on the Court to identify unreferenced evidence supporting a party's position.[1] Accordingly, the Court limits its review to the exhibits, and to the specific portions of the exhibits, to which the parties have expressly cited. Likewise, "[t]here is no burden upon the district court to distill every potential argument that could be made based upon the materials before it on summary judgment," *Resolution Trust Corp. v. Dunmar Corp.*, 43 F.3d 587, 599

---

[1] Fed. R. Civ. P. 56(c)(3) ("The court need consider only the cited materials, but it may consider other materials in the record."); *accord Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 672 (10th Cir. 1998) ("The district court has discretion to go beyond the referenced portions of these [summary judgment] materials, but is not required to do so.").

(11th Cir. 1995), and the Court accordingly limits its review to those arguments the parties have expressly advanced.

## I. Plaintiffs' Motion.

The plaintiffs seek summary judgment on the merits of their claim under Section 1692e(5) of the Act. (Doc. 45 at 8, 9). This is odd, since the Court dismissed this aspect of the federal claim several months ago. (Doc. 32 at 2, 6). In its reply brief, the plaintiffs note the Court retains power to "reassess" its earlier, interlocutory ruling. (Doc. 57 at 2). Quite so, but the plaintiffs have neither invoked a proper procedural mechanism for obtaining reconsideration nor shown that any of the narrow grounds for reconsideration are in play.

Rather than filing a motion to obtain judgment in its favor on a claim already dismissed and thus not before the Court, the plaintiffs should have filed a motion to reconsider the Court's order of dismissal; until and unless the plaintiffs obtain reinstatement of their claim, they cannot possibly obtain summary judgment as to that claim. The plaintiffs have filed no motion to reconsider. Worse, neither their motion for partial summary judgment nor their principal brief acknowledges that their claim has been dismissed or requests alteration of that ruling. The plaintiffs' first such request came in their reply brief, which renders it untimely. *Gross-Jones v. Mercy Medical*, 874 F. Supp. 2d 1319, 1330 n.8 (S.D. Ala. 2012) ("District courts, including this one, ordinarily do not consider arguments raised for the first time on reply.") (citing cases and explaining the underlying rationale). The plaintiffs identify no reason to depart from this well-established rule.

Even had reconsideration been properly and timely sought, the result would remain unchanged. The grant or denial of a motion to reconsider is left to the discretion of the trial court. *Chapman v. AI Transport*, 229 F.3d 1012, 1023-24 (11th Cir. 2000) (en banc). Such a motion may not be used as a vehicle to inject new arguments into the underlying motion, or to submit evidence previously

available but not properly presented on the underlying motion. *Mays v. United States Postal Service*, 122 F.3d 43, 46 (11th Cir. 1997). Nor may it be used to "relitigate old matters." *Wilchombe v. TeeVee Toons, Inc.*, 555 F.3d 949, 957 (11th Cir. 2009) (internal quotes omitted). Instead, "[a] motion to reconsider is only available when a party presents the court with evidence of an intervening change in controlling law, the availability of new evidence, or the need to correct clear error or manifest injustice." *Gibson v. Mattox*, 511 F. Supp. 2d 1182, 1185 (S.D. Ala. 2007) (internal quotes omitted).[2] As this Court has noted, "[m]otions to reconsider serve a valuable but limited function. They do not exist to permit losing parties to prop arguments previously made or to inject new ones, nor to provide evidence or authority previously omitted. They do not, in short, serve to relieve a party of the consequences of its original, limited presentation." *Dyas v. City of Fairhope*, 2009 WL 5062367 at *3 (S.D. Ala. 2009).

The Court dismissed the plaintiffs' FDCPA claims (save for the one invoking Section 1692f(6)) because it found that the defendant's act of publishing foreclosure notices amounted only to the enforcement of a security interest and not the collection of a debt, and because it construed Section 1692a(6) as limiting potential liability for enforcement of a security interest to violations of Section 1692f(6). The Court noted that the Eleventh Circuit has stated that "the plain language of the FDCPA supports the district court's conclusion that foreclosing on a security interest is not debt collection activity for purposes of § 1692g." *Warren*

---

[2] While *Mays* and *Wilchombe* involved post-judgment motions under Rule 59(e), courts within this Circuit have often applied these principles to pre-judgment motions to reconsider. *E.g., Busby v. JRHBW Realty, Inc.*, 2009 WL 1181902 at *2 (N.D. Ala. 2009); *Controlled Semiconductor, Inc. v. Control Systemation*, Inc., 2008 WL 4459085 at *2 (M.D. Fla. 2008); *Eslava v. Gulf Telephone Co.*, 2007 WL 1958863 at *1 (S.D. Ala. 2007); *Summit Medical Center, Inc. v. Riley*, 284 F. Supp. 2d 1350, 1355 (M.D. Ala. 2003). This is only sensible, since allowing parties to withhold arguments and evidence until after losing is equally destructive of judicial economy and fairness in either context. *E.g., Gibson*, 511 F. Supp. 2d at 1185 (even prejudgment, "in the interests of finality and conservation of scarce judicial resources, reconsideration of an order is an extraordinary remedy that is employed sparingly").

*v. Countrywide Home Loans, Inc.*, 342 Fed. Appx. 458, 460 (11th Cir. 2009). Thus, "an enforcer of a security interest, such as a [mortgage company] foreclosing on mortgages of real property … falls outside the ambit of the FDCPA except for the provisions of section 1692f(6)." *Id*. at 460-61 (internal quotes omitted). The Court acknowledged that *Warren* is unpublished and thus non-binding but found it persuasive, especially given the agreement of a wealth of authority as well as the Court's consistent textual analysis.

In its reply brief, the plaintiffs insist that *Warren* has been "overruled" by *Birster v. American Home Mortgage Servicing, Inc.*, 481 Fed. Appx. 579, 582 (11th Cir. 2012). (Doc. 57 at 1, 2, 3). Even had the plaintiffs timely raised this argument, it could not carry the day. As a threshold matter, one unpublished Eleventh Circuit opinion cannot overrule another. At any rate, the plaintiff has failed to show such an overruling.

The plaintiffs assert that "[t]he current Shepard's report shows" that *Birster* overruled *Warren*, (Doc. 57 at 1), but the citation service used by the Court shows no such thing. The reason is clear. As addressed by the Court in its order dismissing most of the plaintiffs' FDCPA claim, both *Birster* and *Reese v. Ellis, Painter, Ratterree & Adams, LLP*, 678 F.3d 1211 (11th Cir. 2012), held only that a communication that *both* enforces a security interest (as by notifying the debtor of impending foreclosure) *and* attempts to collect a debt (as by demanding payment) exposes the defendant to liability beyond Section 1692f(6). The plaintiff has not attempted to show that these cases stretch any further so as to be in tension with *Warren*. On the contrary, and as the Court previously noted, the *Reese* Court expressly "d[id] not decide whether a party enforcing a security interest without demanding payment on the underlying debt is attempting to collect a debt within the meaning of § 1692e." *Id*. at 1218 n.3.

In their reply brief, the plaintiffs further argue that they should receive summary judgment on their claim under Section 1692f(6). (Doc. 57 at 2). For

reasons discussed above, the plaintiffs' failure to seek this relief until their reply brief renders their effort fatally defective.

Finally, and as discussed in Part II, the defendant is entitled to summary judgment as to the plaintiffs' claim under Section 1692f(6).  For the same reasons, the defendant would be entitled to summary judgment as to the rest of the FPDCPA claim had it not already been properly dismissed.

## II.  Defendant's Motion.

The defendant advances five arguments in support of its motion for summary judgment as to the plaintiffs' FDCPA claim, but the Court finds one dispositive, obviating consideration of the others.

### A.  Res Judicata.

The complaint in this action alleges that the plaintiffs had a mortgage on certain residential property with USAA Savings Bank ("USAA"), for which GMAC acted as loan servicer.  The plaintiffs fell behind on their payments, several efforts at loan modification failed, and GMAC began foreclosure proceedings.  The Baldwin County Circuit Court enjoined GMAC from taking any further actions towards foreclosure, but the defendant, as GMAC's agent, published a foreclosure notice in the Onlooker newspaper on April 17 and May 18, 2012.  As a result of these actions, a third party under contract to purchase the property backed out of the deal, leaving the plaintiffs without funds to satisfy the debt.  (Doc. 1 at 2-4).

The injunction to which the complaint refers was entered in a previous action instituted by the plaintiffs in 2011 against USAA and GMAC.  (Doc. 45, Attachment at 3; Doc. 48, Exhibit H).  In March 2013, the plaintiffs amended their state complaint to add, inter alia, a claim for tortious interference with a business relationship.  (*Id*., Exhibit O at 12-13).  The basis of this claim was that "GMAC violated the Court's injunction order and published foreclosure notices in the

Foley Onlooker newpapers [sic] on April 17 and May 18, 2012," with the result that a third party under contract to purchase the property backed out. (*Id*.). This count is expressly predicated on "GMAC's wrongful foreclosure newspaper notices." (*Id*. at 13).

In response to the plaintiffs' new claims, GMAC filed a supplemental motion for summary judgment. (Doc. 48, Exhibit P). As to the tortious interference claim, GMAC argued that the plaintiffs could not establish the elements of the tort because they had no protected business relationship, because GMAC was not a stranger to the transaction, and because the plaintiffs had not been damaged as a result of the foreclosure notices. (*Id*. at 6-7). The state judge, without opinion, granted GMAC's motion for summary judgment "on all claims except for the permanent injunction claim." (Doc. 48, Exhibit S).

"When we consider whether to give res judicata effect to a state court judgment, we must apply the res judicata principles of the law of the state whose decision is set up as a bar to further litigation." *Muhammad v. Secretary, Florida Department of Corrections*, 739 F.3d 683, 688 (11th Cir. 2014) (internal quotes omitted). Thus, as the parties agree, Alabama's res judicata principles govern.

"Under Alabama law, the essential elements of res judicata are (1) a prior judgment on the merits, (2) rendered by a court of competent jurisdiction, (3) with substantial identity of the parties, and (4) with the same cause of action presented in both actions." *Green v. Jefferson County Commission*, 563 F.3d 1243, 1252 (11th Cir. 2009) (internal quotes omitted). "If all four elements are met, any claim that was, or could have been, adjudicated in the prior action is barred from future litigation." *Id*.

The plaintiffs, appropriately, concede that the first two elements of res judicata are satisfied. (Doc. 53 at 5). The question is whether the third and fourth elements are also satisfied.

### 1. Substantial identity of the parties.

Substantial identity of the parties exists when they are "in privity." *Greene v. Jefferson County Commission*, 13 So. 3d 901, 912 (Ala. 2008). Parties are in privity for purposes of res judicata "when there is an identity of interest in the subject matter of the litigation." *Id*. (internal quotes omitted). Citing this test, the Alabama Court of Civil Appeals has held that res judicata "bar[s] a plaintiff from prosecuting a lawsuit against an employee when the same plaintiff already has suffered an adverse judgment on the merits in an action against the employer for the acts of the employee, provided that the prior judgment for the employer was not based on grounds personal to the employer." *Thompson v. SouthTrust Bank*, 961 So. 2d 876, 885 (Ala. Civ. App. 2007).

The defendant was not GMAC's employee but, by the plaintiffs' own insistence, it was agent to GMAC's principal when it published the foreclosure notices. (Doc. 1 at 3-4, ¶¶ 22, 27; Doc. 53 at 4-6). The defendant relies on this relationship to establish that its interest in the subject matter of the litigation is substantially identical to that of GMAC. (Doc. 48 at 12-13). There is no reason apparent or advanced why the same privity rule that applies to employers and their employees should not apply equally to principals and their agents, especially as "an employee is a species of agent." *Langfitt v. Federal Marine Terminals, Inc*., 547 F.3d 1116, 1120 (11th Cir. 2011). The *Thompson* Court noted that "the federal common law of res judicata provides an identity-of-parties rule that is in accord with the general rule set forth above," and that rule equates the principal-agent relationship with the employer-employee relationship. 961 So. 2d at 887. And, in concluding that its application of res judicata "is in accord with the general rule applied in other jurisdictions," the *Thompson* Court quoted a Maine case applying the rule to principals and agents. *Id*. at 885-86.

The *Thompson* Court also relied on *Hughes v. Martin*, 533 So. 2d 188 (Ala. 1988). In *Hughes*, the plaintiff sued two of his former lawyers "as joint tortfeasors" for malpractice, "choosing not to claim, if he could, that [one's] alleged

9

negligence was different from [the other's]." *Id*. at 190-91. Due to these circumstances, there was privity between the two defendants, such that an affirmed summary judgment in favor of one defendant was res judicata as to the other. *Id*. Here, as in *Hughes*, the plaintiffs do not allege that the past and present defendant engaged in different conduct; on the contrary, they allege that both are liable for the exact same conduct – the defendant as the actor and GMAC as the actor's principal. Just as *Hughes* supports an identity of interest between an employer and an employee both sued for the employee's conduct (as in *Thompson*), so also it supports an identity of interest between a principal and an agent both sued for the agent's conduct.

Even absent *Thompson*, the Court would reach the same conclusion, based on *Hughes* and *Gonzalez, LLC v. DiVincenti*, 844 So. 2d 1196 (Ala. 2002). In *Gonzalez*, the plaintiff sued TIG and another entity based in part on the inspection work of TIG's contractors. After the first suit settled, the plaintiff sued the contractors. Because TIG and the other original defendant "had to defend the inspection work of their contractor[s]," the contractors were "substantially identical parties to those named in" the first lawsuit for purposes of the third element of res judicata. *Id*. at 1203. *Gonzalez* thus involves the same pattern as this case: a defendant sued for the conduct of another, followed by suit against the other for the same conduct. Because both defendants are sought to be held liable for the conduct of one defendant, the second defendant shares a substantially similar interest in the subject matter of the litigation and thus satisfies the third element. When, on the other hand, liability is "fact specific to each defendant," as when they are sued for separate conduct, this is "sufficient to negate any 'identity of interest.'" *Bradberry v. Carrier Corp.*, 86 So. 3d 973, 986 (Ala. 2011).

As noted, the *Thompson* Court added a proviso that the third element of res judicata would be satisfied if "the prior judgment for the employer was not based on grounds personal to the employer." 961 So. 2d at 885. It is not clear that the defendant can clear this hurdle. Two of the three grounds on which GMAC

moved for summary judgment appear uniquely addressed to a tortious interference claim and are not clearly applicable to a FDCPA claim. Because the state judge issued no opinion, the Court cannot determine that he dismissed the tortious interference claim based on GMAC's third argument (concerning damages), which is the only one that would clearly apply to the federal claim. Since the defendant bears the burden of proving the elements of res judicata,[3] this uncertainty would preclude the defendant from obtaining the benefit of res judicata were the Court to conclude that *Thompson* should be followed in this respect. But the Court concludes otherwise.

The Court's role, in the absence of an Alabama Supreme Court decision resolving the question, is to "anticipate how the Supreme Court would decide" the issue. *State Farm Mutual Automobile Insurance Co. v. Duckworth*, 648 F.3d 1216, 1224 (11th Cir. 2011). "In doing so, we consider, in addition to Supreme Court precedent, decisions of the State's intermediate appellate courts that appear to be on point, provided that there is no indication that the Supreme Court would reject them." *Id*. Because *Thompson* was decided by an intermediate appellate court, this rule applies.

That part of *Thompson* finding an identity of interest when an employer and its employee are both sued for the employee's conduct is, as discussed above, perfectly consistent with *Hughes* and *Gonzalez*, and the Court finds no indication that the Alabama Supreme Court would disavow *Thompson* in this regard. But, as discussed below, the *Thompson* proviso is inconsistent with Alabama law concerning the third element of res judicata, and the Court thus finds ample indication the Alabama Supreme Court would reject it.

The governing test, as set forth above, is whether the current defendant and the past defendant share "an identity of interest in the subject matter of the litigation." *Greene*, 13 So. 3d at 912. Without offering a precise definition of "the

---

[3] *In re: Piper Aircraft Corp.*, 244 F.3d 1289, 1296 (11th Cir. 2001) (federal law); *Stewart v. Brinley*, 902 So. 2d 1, 11 (Ala. 2004) (Alabama law).

subject matter of the litigation," the Alabama Supreme Court has made clear that it focuses on the central point of the litigation. Thus, in *Greene*, the past and current defendants "share[d] th[e] same interest in the subject matter of the dispute, namely, invalidating the resolution." *Id*. As applied to this case, the subject matter of the dispute is the publication of two foreclosure notices, and GMAC and the defendant plainly share the same interest in that dispute, since both are sued for the defendant's act of publishing those notices. What the *Thompson* proviso appears to require, however, is not just an identity of interest in the subject matter of the litigation but an identity of interest in particular defenses to the litigation, something far beyond the governing standard. Thus, the Alabama Supreme Court in *Greene*, *Hughes* and *Gonzalez* all deemed the third element of res judicata satisfied without conducting any comparison of the claims or defenses raised in the past and present lawsuits or intimating that any such comparison is necessary. The Court thus finds the *Thompson* proviso to be inconsistent with established Supreme Court precedent.

The genesis of the *Thompson* proviso lies with *Griffin v. Bozeman*, 173 So. 857 (1937), which the *Thompson* Court discussed and quoted at length. 961 So. 2d at 888. In *Griffin*, the defendants were sued for trespass to realty. The plaintiff had previously sued one Bolinger for the same trespass, claiming he had participated in the trespass with the defendants or was accountable for their actions. The first action ended with a general verdict for Bolinger. 173 So. at 858, 860. The defendants pleaded "res judicata," but the Supreme Court ruled it could not address that issue directly because the defendants had failed to properly preserve it for appeal. *Id*. at 858. However, the defendants had also moved unsuccessfully to dismiss for the plaintiff's failure to pay into court the costs of the first suit as a condition of proceeding with the second suit, as required by statute, and they had properly preserved that issue for appeal. The statute required such payment only if the second suit "involv[ed] the same cause of action between the same parties or their privies." The Court ruled that the unreviewable pleas of res

judicata "serve to illustrate the motion to dismiss for nonpayment of the costs of the former suit" because, "[i]f the judgment in favor of Bolinger in that suit operated to the benefit of these defendants, they had a right as privies of Bolinger to the benefits of" the statute. *Id*.

The Court noted that mutuality of estoppel (here, that a judgment in favor of Bolinger could be conclusive in favor of the defendants only if a judgment against Bolinger would also be conclusive against the defendants) is generally required before a second defendant can assert as a defense a previous judgment in favor of another defendant, but an exception exists "when the liability of [a] defendant is altogether dependent upon the liability of one who was exonerated in the prior suit." *Id*.

The *Griffin* Court then considered whether the defendants' liability was altogether dependent on the liability of Bolinger and concluded that this depended on the reason Bolinger was exonerated. The Court recited the familiar rule that, when the liability of one defendant is based on respondeat superior, "a judgment exonerating the servant will relieve the master," but it cautioned that "it does not follow in all cases that a judgment favorable to the master would exonerate the servant." 173 So. at 858-59. The servant would be exonerated if the judgment for the master was based on a finding there was no trespass (since the absence of a trespass would be equally true for the servant) but would not be exonerated if the judgment for the master was based on a determination there was no master-servant relationship (since that would not impact the servant's potential liability). *Id*. at 859. Because Bolinger received only a general verdict, the defendants could not show he had not prevailed on a "personal defense," and his exoneration on such a defense would not "exonerate these defendants." *Id*. Because the liability of the defendants was not altogether dependent upon Bolinger's liability (he could be exonerated and they still be liable if he was exonerated on a personal defense), the exception to mutuality of estoppel was lacking.

In developing the *Thompson* proviso, the Court of Civil Appeals quoted the *Griffin* Court's statement that, in order for Bolinger's verdict to exonerate the defendants, they had to show the verdict was based on a finding that no trespass had been committed, "'*rather than that the verdict was on some personal defense.*'" 961 So. 2d at 888 (emphasis supplied by *Thompson*). As discussed below, however, *Griffin* was decided under principles of collateral estoppel, not res judicata, and it is thus not relevant to res judicata analysis.

Although the *Griffin* defendants phrased their plea as "res judicata," the Court in fact addressed instead "the estoppel of an adjudication." 173 So. at 859. The latter concept is now more commonly referred to as "collateral estoppel" or "estoppel by judgment." *Leverette ex rel. Gilmore v. Leverette*, 479 So. 2d 1229, 1235 (Ala. 1985).

Res judicata and collateral estoppel are not the same thing, although they are "closely related." *Ex parte LCS, Inc.*, 12 So. 3d 55, 57 (Ala. 2008) (internal quotes omitted). "The doctrine of res judicata, while actually embodying two basic concepts, usually refers to what commentators label 'claim preclusion,' while collateral estoppel … refers to 'issue preclusion,' which is a subset of the broader res judicata doctrine." *Id*. (internal quotes omitted). Unfortunately, "[c]ourts frequently use the term 'res judicata' in an imprecise way, loosely denoting all the preclusive effects of prior judgments," and the Alabama Supreme Court is no exception. *Little v. Pizza Wagon, Inc.*, 432 So. 2d 1269, 1272 (Ala. 1983) (Jones, J., concurring specially). *Griffin* is an example of this imprecision, with the term "res judicata" (actually injected by the defendants, not the Court) used in the broader sense encompassing issue preclusion (collateral estoppel or estoppel by judgment) in addition to claim preclusion (res judicata). *Thompson* is an example of the unintended consequences of such imprecision, as the Court likely misunderstood *Griffin*'s use of "res judicata" as indicating the Supreme Court was addressing claim preclusion.

Among the differences between collateral estoppel and res judicata, as properly defined, is that the former doctrine precludes only the re-litigation of matters (issues) that were actually adjudicated in a previous action, while res judicata also precludes the litigation of matters (claims) "that could have been adjudicated" in the previous action. *Ex parte LCS*, 12 So. 3d at 57 (internal quotes omitted). "Res judicata, therefore, bars a party from asserting in a subsequent action a claim that it has already had an opportunity to litigate in a previous action." *Id*. (internal quotes omitted). Collateral estoppel, when applicable, thus prevents a litigant from trying to win in a second lawsuit on an issue it has already lost in the first, while res judicata, when applicable, prevents a litigant from trying to win in a second lawsuit on a claim it failed to raise in the first.

Because the purposes of the doctrine are different, so are their elements. The elements of res judicata have been set out above. "For the doctrine of collateral estoppel to apply, the following elements must be established: (1) that an issue in a prior action was identical to the issue litigated in the present action; (2) that the issue was actually litigated in the prior action; (3) that resolution of the issue was necessary to the prior judgment; and (4) that the same parties are involved in the two actions." *Walker v. City of Huntsville*, 62 So. 3d 474, 487 (Ala. 2010) (internal quotes omitted). As with res judicata, the fourth element can be satisfied if the party asserting collateral estoppel "is in privity with a party to the prior action," with privity founded on "an identity of interest in the subject matter of litigation." *Leon C. Baker, P.C. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 821 So. 2d 158, 165 (Ala. 2001) (internal quotes omitted).

Although the *Griffin* Court purported to address "whether these defendants were shown to be privies of Bolinger," 173 So. at 858, its analysis focused on whether an issue in the second lawsuit (whether a trespass had occurred) had been actually litigated and necessarily resolved in the first lawsuit (or whether a different issue, personal to Bolinger, had instead underlain the first verdict). That is, the *Griffin* analysis addressed the first three elements of collateral estoppel as

listed by *Walker*. Whether or not that was an appropriate way of resolving the privity issue in collateral estoppel cases at the time *Griffin* was decided almost eight decades ago, it is no longer appropriate under the formulation of *Walker* and other modern cases. Instead, a court must look only to whether the current defendant and the past defendant share an identity of interest in the subject matter of the litigation. As with res judicata, the privity inquiry in the collateral estoppel context is undertaken without comparing the issues presented and decided in the two lawsuits. *See Leon C. Baker*, 821 So. 2d at 165-66 (finding that the plaintiff in the second lawsuit was in privity with the plaintiff in the first lawsuit, based exclusively on their relationship).

Because Alabama Supreme Court precedent is clear that the existence of an identity of interest in the subject matter of the litigation is determined without regard to variations in the defendants' defenses, and because the authority on which *Thompson* relied for a contrary rule does not support it, the Court concludes that the Alabama Supreme Court has not adopted the *Thompson* proviso and would not adopt it. Accordingly, the Court declines to apply the *Thompson* proviso here. The Court further concludes that, under the governing standard, the defendant is in privity with GMAC and thus satisfies the third element of res judicata.

The plaintiffs offer no good response. They first stress that the existence of privity has generally been resolved on an "ad hoc basis." (Doc. 53 at 5). This may be so,[4] but it does not leave the plaintiffs free to ignore existing precedent introducing more precision into the analysis in particular situations. As discussed above, *Hughes*, *Gonzalez* and *Thompson* (shorn of its proviso) introduce just such precision in the circumstances of this case.

The plaintiffs next object that the defendant could not have been harmed by a ruling against GMAC on the tortious interference claim, because the defendant is not sued for tortious interference but for FDCPA violations. (Doc. 53 at 6). This

---

[4] *E.g., Stewart*, 902 So. 2d at 11.

argument appears better suited to the fourth element of res judicata than the third but, as discussed below, it would fail even there because the "same cause of action" requirement is not drawn as tightly as the plaintiffs assume.

Finally, the plaintiffs insist that lawyers can be sued under the Act and that a ruling for the defendant would "blatantly upset the existing body of law with respect to lawyer liability claims" under the Act. (Doc. 53 at 6-7). But the only thing a ruling for the defendant upsets is the plaintiffs' misapprehension that they can engage in serial litigation against substantially identical parties based on precisely identical conduct without running afoul of res judicata principles. Nothing – at least, nothing in the law – prevented the plaintiffs from suing the defendant along with GMAC, a course that would have preserved their FDCPA claims against the defendant.[5]

### 2. Same cause of action.

As noted, GMAC was sued under state law for tortious interference with business relations, while the defendant was sued under federal law for violations of the Act. The plaintiffs believe this distinction to be dispositive, (Doc. 53 at 5), but it is not. "Res judicata applies not only to the exact legal theories advanced in the prior case, but to all legal theories and claims arising out of the same nucleus of operative facts." *Chapman Nursing Home, Inc. v. McDonald*, 985 So. 2d 914, 921 (Ala. 2007) (internal quotes omitted). "[T]he principal test for comparing causes of action [for application of res judicata] is whether the primary right and duty or wrong are the same in each action." *Id*. (internal quotes omitted). Also, "two causes of action are the same for res judicata purposes when the same evidence is applicable in both actions." *Id*. (internal quotes omitted).

The "clearly definable and pragmatic rule" has been expressed as follows:

---

[5] The plaintiffs have not claimed a legal impediment to suing the defendant in the original action, and none exists. *See* 15 U.S.C. § 1692k(d) (permitting claims under the Act to be brought in state court).

The application of the doctrine of res judicata to identical causes of action is not dependent on the identity or differences in the forms of the two actions, although such differences may be considered. If a claim, which arises out of a single wrongful act or dispute, is brought to a final conclusion on the merits, then all other claims arising out of that same wrongful act or dispute are barred, even if those claims are based on different legal theories or seek a different form of damages, unless the evidence necessary to establish the elements of the alternative theories varies materially from the evidence necessary for a recovery in the first action.

*Equity Resources Management, Inc. v. Vinson*, 723 So. 2d 634, 638 (Ala. 1998).

The governing standard is easily met here. First, the primary wrong/wrongful act or dispute is the same in both lawsuits: the publication of the two foreclosure notices. Second, both the tortious interference claim and the FDCPA claim arise out of the same nucleus of operative facts, viz: the publication of the foreclosure notices, made wrongful by the state court injunction, causing a purchaser to back out of his contract. Third, the evidence needed to prove each claim overlaps to a great degree, viz: (1) that GMAC (through the defendant) published foreclosure notices; (2) that this was done on particular dates in a particular publication; (3) that, on those dates, an injunction was in place; (4) that the publication of the foreclosure notices violated the terms of the injunction; and (5) that the publication caused a purchaser to back out of his contract. (Doc. 1 at 3-5; Doc. 48, Exhibit O at 12-13). While some additional evidence might be needed to prove the tortious interference claim, there is no indication that any such additional evidence is so massive as to outweigh the striking identity of evidence between the two claims. *See Geer Brothers, Inc. v. Crump*, 349 So. 2d 577, 580 (Ala. 1977) ("[I]f *substantially* the same evidence supports their issues, the judgment in the former action is a bar to the latter.") (emphasis added), *cited in Jefferson County Commission v. Edwards*, 32 So. 3d 572, 581 (Ala. 2009).

The plaintiffs offer no response to this straightforward analysis. Instead, they insist that res judicata cannot apply because, when they filed their original state complaint in 2011, the 2012 foreclosure notices had not been published and

thus they had no cause of action against GMAC or the defendant concerning those publications. (Doc. 53 at 7-8). According to the plaintiffs, "'res judicata does *not* apply where the facts giving rise to the second case only arise after the original pleading is filed in the earlier litigation.'" (Doc. 53 at 7 (emphasis in original) (quoting *In re: Piper Aircraft Corp.*, 244 F.3d 1289, 1298 (11th Cir. 2001)).

There are two fatal flaws in the plaintiffs' argument. First, the actual rule announced in *In re: Piper* and the case on which it relied is more nuanced, providing that, "for res judicata purposes, claims that 'could have been brought' are claims in existence at the time the original complaint is filed *or claims actually asserted by supplemental pleadings* or otherwise *in the earlier action*." *Manning v. City of Auburn*, 953 F.2d 1355, 1360 (11th Cir. 1992) (emphasis added); *accord In re: Piper*, 244 F.3d at 1298. The amended complaint, of course, asserted the tortious interference claim in the earlier action. Second, even did these cases support the plaintiffs' reading, they express federal rules of res judicata, not Alabama rules, and thus do not apply here.

### 3. Invasion of privacy.

The defendant purports to invoke res judicata "on all of plaintiffs' claims." (Doc. 48 at 10). Its argument, however, fails to analyze the fourth element of res judicata with respect to the plaintiffs' invasion of privacy claim (or else erroneously assumes that the elements and evidence relevant to that claim are identical to those relevant to the federal claim). (*Id*. at 15). Moreover, while the defendant assumes that the invasion of privacy claim is based only on publication of the two foreclosure notices, (*id*. at 14), it does nothing to establish the accuracy of its assumption, of which the Court is skeptical.[6] In short, the defendant has not met its burden of showing that the state claim is barred by res judicata.

---

[6] The complaint alleges that the plaintiffs received multiple letters informing them that their loan was in default and that foreclosure was proceeding. (Doc. 1, ¶¶ 15, 18). The complaint then alleges that "[a]ll of the above-detailed conduct … was … an

**B. Supplemental Jurisdiction.**

The defendant asks the Court to decline to exercise supplemental jurisdiction over the state claim. (Doc. 48 at 20). The plaintiffs elected not to respond.

Supplemental jurisdiction is in play only if there is no original jurisdiction over the state claim. The plaintiffs acknowledge that all parties are Alabama citizens. (Doc. 1 at 1). There thus can be no original jurisdiction over the state claim.

"The district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if ... the district court has dismissed all claims over which it has original jurisdiction ...." *Id*. § 1367(c)(3). This language invests the Court with discretion to exercise, or not to exercise, supplemental jurisdiction. *Parker v. Scrap Metal Processors, Inc*., 468 F.3d 733, 743 (11th Cir. 2006). In exercising its discretion under Section 1367(c), "the court should take into account concerns of comity, judicial economy, convenience, fairness, and the like." *Cook ex rel. Estate of Tessier v. Sheriff of Monroe County*, 402 F.3d 1092, 1123 (11th Cir. 2005) (internal quotes omitted). However, "[w]e have encouraged district courts to dismiss any remaining state claims when, as here, the federal claims have been dismissed prior to trial." *Raney v. Allstate Insurance Co.*, 370 F.3d 1086, 1089 (11th Cir. 2004). This preference exists because, "in the usual case in which all federal-law claims are eliminated before trial, the balance of

---

invasion of Plaintiffs' privacy by an intrusion upon seclusion." (*Id*., ¶ 32). Count Two, which is styled as a claim for invasion of privacy (a) "by intrusion upon seclusion" and (b) "by revelation of private financial facts to third party," incorporates these allegations by reference. (*Id*. at 5). Count Two then explains that invasion of privacy by intrusion upon seclusion is based on the defendant's "repeatedly and unlawfully attempting to collect a debt," while invasion of privacy by revelation of private financial facts is based on the defendant's "repeatedly and unlawfully contacting third parties about this debt by falsely advertising the foreclosure." (*Id*. at 6). All of these allegations indicate that the state claim is based on more than publication of the two foreclosure notices.

factors to be considered under the pendent jurisdiction doctrine — judicial economy, convenience, fairness, and comity — will point toward declining to exercise jurisdiction over the remaining state-law claims." *Carnegie-Mellon University v. Cohill*, 484 U.S. 343, 350 n.7 (1988).

The preference is particularly strong when the federal claims "have dropped out of the lawsuit in its early stages." *Cohill*, 484 U.S. at 350. However, the preference also applies when the federal claims are eliminated on motion for summary judgment. *See, e.g., Michael Linet, Inc. v. Village of Wellington*, 408 F.3d 757, 763 (11th Cir. 2005); *Murphy v. Florida Keys Electric Cooperative Association*, 329 F.3d 1311, 1320 (11th Cir. 2003); *Graham v. State Farm Mutual Insurance Co.*, 193 F.3d 1274, 1282 (11th Cir. 1999) ("If no federal claim survives summary judgment, the court sees no reason why the other claims should not be dismissed or remanded pursuant to 28 U.S.C. § 1367(c)(3)."). In such a situation, considerations of comity and fairness among the parties continue to favor dismissal. *See United Mine Workers v. Gibbs*, 383 U.S. 715, 726 (1966) ("Needless decisions of state law should be avoided as a matter of comity and to promote justice between the parties, by procuring for them a surer-footed reading of applicable law. Certainly, if the federal claims are dismissed before trial, ... the state claims should be dismissed as well.").[7] Thus, retention of jurisdiction in this case is indicated only if considerations of judicial economy and convenience favor such retention and do so with sufficient force to outweigh the continuing pull of comity and fairness towards dismissal. Without argument from the plaintiffs, which is lacking, the Court is unable to make such a finding.

---

[7] Were dismissal of this action to leave the plaintiffs unable to re-file their state claim in state court due to expiration of the statute of limitations, a serious question of unfairness would be presented. *E.g., Beck v. Prupis*, 162 F.3d 1090, 1100 (11th Cir. 1998). Congress, however, has provided that, when a court declines to exercise supplemental jurisdiction, any state limitations period "shall be tolled while the claim is pending [in federal court] and for a period of 30 days after it is dismissed." 28 U.S.C. § 1367(d). The Supreme Court has upheld this provision as constitutional. *Jinks v. Richland County*, 538 U.S. 456, 465 (2003).

**CONCLUSION**

For the reasons set forth above, the defendant's motion for summary judgment is **granted** with respect to Count One and **denied** with respect to Count Two. The plaintiffs' motion for partial summary judgment is **denied**. Count Two is **dismissed without prejudice**.[8]

DONE and ORDERED this 25th day of June, 2014.

s/ WILLIAM H. STEELE
CHIEF UNITED STATES DISTRICT JUDGE

---

[8] The defendant has filed two motions to strike inadmissible evidence. (Docs. 55, 61). Because the motions concern evidence not relevant to the Court's decision and not considered by the Court, they are **denied as moot**.